TYSON, Judge.
George Glover was indicted for two separate offenses of “burglary in the third degree” and the cases were consolidated for trial. The jury found the appellant not guilty in case number 82-2129. A verdict *175 of “guilty of burglary in the third degree” was returned against the appellant in case number 82-2130. The trial judge sentenced the appellant to fifteen years’ imprisonment in the penitentiary.
At approximately 11:30 on the night of January 14, 1982, Officers Robert Kim-brough and Peter Zanus of the Birmingham Police Department were on patrol in the Ensley business district. As they passed the 600 block of 19th Street, the officers observed the appellant crawling out of a broken glass door from a business operated by James H. Coker. The officers also noticed a broken window at Braswell’s Furniture Company, which was located next door to Coker’s business. The appellant was then placed under arrest.
James H. Coker stated that, when he arrived at his business after the incident in question, he observed the glass door was broken. All of the desk drawers in the office had been ransacked and the cash drawer was open. The only item found missing was a coin gum machine which was never located.
James R. Braswell and Phillip Hilton Mullenix, the manager of Braswell’s business, testified that they were summoned to Braswell’s Furniture Company on the night in question because the alarm had gone off. Some of the furniture had been moved but no merchandise was found missing.
A statement made by the appellant to Officer Robert Berry was introduced into evidence. The appellant stated that on the night in question he had gone to the Ensley precinct (which is also on 19th Street) to inquire about a matter concerning his ex-wife. After he left the precinct, he walked down 19th Street. When he was in front of Braswell’s, two black males pushed him through the window and then ran away. As the appellant was going back to the precinct, he was arrested.
The appellant chose not to testify and did not present any other evidence at trial.
I
During the trial of this case, defense counsel informed the trial court that he had been notified that the State intended to impeach the appellant by the use of prior convictions if he took the stand. The following excerpts from the record, all of which took place outside the hearing of the jury, pertain to this matter. (R. 68-89).
“Also, in case number 9-5-8-5-5, on January 13, 1969, in Fulton County, Georgia, there was a 3-count indictment for robbery, three counts of each. He pled guilty to five years for the first count, five years for the second count and the third count five years suspended.

“MR. DODD: We would object specifically to them using for impeachment anything from the State of Georgia unless they have certified copies to show we would state to the Court now that the defendant has never been convicted in the State of Georgia and it would be highly prejudicial if the defendant were to testify that he has never been convicted in the State of Georgia of anything.
“THE COURT: If they have got something there they are entitled. They can’t just bring out something off the wall.
“MR. SOWA: I’ll tell you the way we discovered it. We sent for extradition and received a letter back which I will show you a copy of, of a George Glover that was in our file. We then called over there to that particular prison'facility and they gave us certain information and we then called the clerk’s office in Fulton County and that’s when we got the dates of the robbery conviction.
“THE COURT: Do you have any correlation between the date of birth?
“MR. SOWA: Other than the information on the attached warrant, we could compare that. That is apparently what extradition was sought on and then it was later dropped.
“THE COURT: This is an Alabama case.
“MR. SOWA: Of course, the letter reflects that he was in prison in Georgia.
*176 “THE COURT: I would say that’s bona fide.
“MR. SOW A: It was basically done away with under the Alabama case.
“THE COURT: I understand. That doesn’t prove. I’ll let you ask the question.
“MR. SOWA: We do not suppose that that proves that he was. I won’t go into all of that. We understand that.
“MR. DODD: I object to it. There is no showing that the George Glover that this letter refers to is the same George Glover that is here today. To allow them to ask a question wherein he will answer no, or not, it is going to be highly prejudicial to the defendant; especially when they have got other convictions. Then they are allowed to ask about robbery. I would object and ask to be protected by the motion in limine.
“THE COURT: Overruled.
“MR. DODD: We except.

“THE COURT: Does the defendant wish to testify?
“MR. DODD: If you recall Your Honor., ruled that the State will be allowed to-, impeach the defendant on previous convictions. We have objected to it in the form of a motion in limine. The defendant, because Your Honor has ruled in that fashion, we will not testify, but we would like to proffer to the Court basically, for the record, basically what the defendant would say if he were to testify.
“THE COURT: Consistent with that statement?
“MR. DODD: It is consistent with the statement. There would be some changes in it, but it is consistent with the fact that he, the proffered testimony would be that there were two black males, that he was pushed through a window and he did not commit any burglary. He has chose not to testify specifically because of the possibility of being impeached on an unknown Georgia conviction, the Federal case and the State case which we are saying are malum prohibitum and not malum prosay (sic) and should not be allowed.
“THE COURT: All right. Now, Mr. Glover, because of what was said by you earlier to me, I want to go over one or two things with you. And I have reference to your statements about your lawyer and changing testimony and so forth.
“The law says that the defendant has control of three things. You have control over and the lawyer cannot tell you what to do. In other words, you can overrule your lawyer, do you understand what I am saying? Three things, One, what plea you enter, and you have pled not guilty. That is your decision to do that. In other words, your lawyer cannot plead for you.
“Second, what the facts are. Whatever you say the rendition of the facts are, that is what it is. That is what he defends on. Not what he determines them to be, but what you say they are. Do you understand? If he has a difference with you on it, you overrule him. Do you see what I am saying?
“And, whether you take the witness stand or not. That is your decision. You could talk to him, counsel with him, talk back and forth and he can advise you, certainly, and you may take his advice. But the decision is yours. As opposed to say what questions he asked these witnesses. What he says in closing arguments, what witnesses he calls on your defense that is his decision. That is the conduct of a trial he makes those decisions. What objections to make at the trial, he makes those decisions.
“But the three things I have gone over with you, you make the decisions. You understand what I mean? You have already pled not guilty, that was your decision. Whether to take the witness stand or not is your decision. If he tells you he doesn’t think you ought to, you can either agree with him or not agree with him. If you want to you have the right to get up here. And when you do, whatever the state of the facts are, as you say they are, that is what you testify. Do you understand what I’m saying?
*177 “If you take the stand it is true, you will be impeached by these convictions or supposed convictions. None' of them may be you. I don’t know. I’m just saying if they are, the State can ask you questions about them. Do you understand what I am saying? Is there any question you want to ask me about it?.' Do you want to think about it a minute or have you already made up your mind?
“THE DEFENDANT: I’ve made up my mind. I’m not going to testify.
“MR. DODD: I want these things which the State referred to, the Georgia letter and this and this marked as Defendant’s Exhibit One for the record as to what I’m objecting to.
“THE COURT: Again, for the record, on an old case against this man, George Glover, in which you attempted to extradite him from the State of Georgia, is that correct? And he was in the penitentiary in the State of Georgia. Your information is that it is on robbery cases. And the name on there is George Glover?
“MR. SOWA: Yes, sir.
“MR. DODD: If necessary, Your Honor, we have stated for the Court and as far as the record is concerned, I think I better have George Glover testify to that point, and to that point only, outside the presen of the jury to testify that he has never been in prison in the State of Georgia.
“THE COURT: It is in the record. He denies it. Would you still insist on asking that question if he took the stand?
“MR. SOWA: Yes, sir.”
The appellant asserts that his motion in limine to prevent the State from impeaching him on an alleged prior felony conviction in the State of Georgia, if he chose to testify, was improperly denied by the trial court. Even though the appellant chose not to testify, this issue is properly before this court.
Merely because a defendant chooses not to testify at his trial does not render as moot his assertion that the trial court committed reversible error in ruling that evidence of a prior conviction could be used for impeachment purposes if he took the stand and testified. United States v. Langston, 576 F.2d 1138 (5th Cir.1978), cert. denied, 439 U.S. 932, 99 S.Ct. 324, 58 L.Ed.2d 327 (1978).
In United States v. Toney, 615 F.2d 277 (5th Cir.1980), cert. denied, 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248 (1980), the Fifth Circuit stated that:
“Though Toney did not testify or even proffer his proposed testimony [the appellant did proffer his proposed testimony in the case at bar] and though the jury could not have been influenced by the allegedly prejudicial mail fraud conviction, Toney may, nevertheless, claim reversible error in the district court’s disposition, albeit tentative, of his motion to foreclose the prosecution from attempting a line of impeachment.”
Toney, supra at 279. (Citations omitted).
Since we have held that this issue is preserved for our review, we now must determine whether the trial judge erred to reversal in denying the appellant’s motion in limine.
It is clear from the previously quoted portion of the record that the State was going to attempt to impeach the appellant if he took the stand by asking him about the prior felony conviction from Georgia. This is a proper method of impeachment. See C. Gamble, McElroy’s Alabama Evidence § 145.01(15) (3rd ed. 1977).
However, if the appellant had decided to testify, it is clear that from the record he would have denied the conviction and then the State would have had to prove the conviction. See C. Gamble, McElroy’s Alabama Evidence, § 145.01(17) (3rd ed. 1977).
“... [T]he proper method of proving a prior conviction is by a judgment entry in the court records or a certified copy of the court record showing a judgment entry of the prior conviction. Highsmith v. State, 55 Ala.App. 272, 314 So.2d 874 (1975); Headley v. State, 51 Ala.App. 148, 283 So.2d 458 (1973)."
*178 McGhee v. State, 333 So.2d 865 (Ala.Crim.App.1976).
The record indicates that the State did not have either one of these items in its possession when the hearing on the appellant’s motion in limine took place. “... [T]o ask a defendant whether he has had criminal convictions, without possessing a certified copy of the record, is fraught with possibilities of error ...” Ciravolo v. United States, 384 F.2d 54, 56 (1st Cir. 1967). We must agree.
Based on the above discussion, we hold that the trial judge erred in denying the appellant’s motion in limine. Therefore, this cause must be reversed and remanded for a new trial.
II
The second issue the appellant raises on appeal is not properly before this court although the appellant did object to the trial court’s refusal to give his written requested charge on criminal trespassing in the second degree. He did not give the grounds of his objection as required by Rule 14, Temporary Rules of Criminal Procedure. Thus, the issue was not preserved for our review.
For the reasons shown, this cause is due to be and is, hereby, reversed and remanded.
REVERSED AND REMANDED.
All the Judges concur.